FILED IN CHAMBERS
U.S.D.C. - Atlanta

JUL 20 2015

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | CRIMINAL CASE NO. |
| v. | 1:14-CR-146-ODE-GGB |
| DESHAWN REILLY (1) and CUREL TAYLOR (2) | |

ORDER

This criminal case is before the Court on the objections [Doc. 102] of Defendant Deshawn Reilly ("Reilly") to the Report and Recommendation ("R&R") of United States Magistrate Judge Gerrilyn G. Brill [Doc. 97]. For the following reasons, Reilly's objections [Doc. 102] are OVERRULED, and the R&R [Doc. 97] is ADOPTED IN FULL.

I. **Procedural History**

Defendants Reilly and Curel Taylor ("Taylor") are charged in a superseding indictment [Doc. 30] with making a false statement on a Firearms Transaction Record (ATF Form 4473) that Ms. Taylor was the buyer of certain firearms when, in fact, she was not the true purchaser (Count I). Reilly is also charged with possession of firearms by a convicted felon (Counts II and III) and possession of marijuana with the intent to distribute (Count IV).

Motions to suppress have been filed by Reilly [Docs. 23, 49] and Taylor [Doc. 46]. After conducting evidentiary hearings on the pending motions, the Magistrate Judge entered an R&R on June 4, 2015, recommending that both motions be denied. Defendant Reilly timely filed objections on June 23, 2015 [Doc. 102]. Defendant Taylor has not filed objections to the R&R.

## II. Legal Standard

The Court must conduct a de novo review of those portions of the Magistrate Judge's R&R to which a party objects. Fed. R. Crim. P. 59(b)(3). The Court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); United States v. Raddatz, 447 U.S. 667, 673-74 (1980). For a party's objections to warrant de novo review, he "must clearly advise the district court and pinpoint the specific findings that [he] disagrees with." United States v. Schultz, 565 F.3d 1353, 1360 (11th Cir. 2009). The remainder of the R&R, to which no party offers specific objections, will be assessed for clear error only. See Tauber v. Barnhart, 438 F. Supp. 2d 1366, 1373 (N.D. Ga. 2006) (Story, J.).

## III. Statement of Facts

Defendants raise no objection to the R&R's findings of fact. Accordingly, by this Order the R&R's statement of facts is adopted and is set out below:

On March 14, 2014, an employee at the Arrowhead Pawn Shop ("Arrowhead") in Jonesboro, Georgia, called Bureau of Alcohol, Tobacco and Firearms ("ATF") Special Agent ("SA") Benjamin Southall to notify him that a woman (Defendant Taylor) was attempting to buy two identical FN Model Five Seven pistols while accompanied by three other people. The weapons were expensive, high-powered pistols that shoot rifle rounds. SA Southall passed the information he received on to ATF SA Chuck Sedberry. In SA Sedberry's experience, it is common for a woman to be a straw purchaser for a man who is prohibited from buying guns. Adding to his suspicion, SA Sedberry learned that a handgun that Taylor had

purchased elsewhere had recently been recovered by law enforcement in Fairburn, Georgia.

On March 17, 2014, an Arrowhead employee called Taylor and left a message for her that her background check was complete and she could come to the store to finalize the purchase of her guns. When Taylor called back, the store's caller I.D. showed that she was calling from a phone line subscribed to by Deshawn Reilly. SA Sedberry ran a criminal background check on Reilly and learned that he was a convicted felon and therefore prohibited by federal law from purchasing firearms.

On March 19, 2014, Special Agents Southall and Sedberry received a call from a different Arrowhead employee who said that Taylor was in the store with another individual, later identified as Deshawn Reilly. The Arrowhead employee told SA Southall that Taylor was purchasing an FN pistol and a shotgun, and that Reilly had selected the shotgun to be purchased. The employee said that Taylor and Reilly would be exiting the store with the pistol in a white plastic bag and the shotgun in a white and blue box.

Special Agents Southall and Sedberry spotted Taylor and Reilly leaving the store--Taylor carrying the white bag and Reilly carrying the blue and white shotgun box. Several agents, including Southall, Sedberry, Brooks, Gray, and Judkins, followed Defendants' car to their house at Niskey Lake Road. The car stopped when it was halfway into the garage.

SA Brooks got out of his car and approached Defendants while displaying his ATF credentials. Reilly got out of the car and walked up the driveway towards the street. Taylor also got out of the car but remained close to the trunk. Reilly approached the

agents at the end of the driveway and asked them what was going on. At least two agents observed that Reilly was wearing a sweatshirt with a large bulge in the front pocket. SA Judkins ordered Reilly to stop moving and to show his hands. Reilly complied. SA Judkins asked Reilly if he had any weapons on him, and Reilly stated, "No, they're in the house." SA Judkins then patted Reilly down for weapons.

The agents removed from Reilly's front sweatshirt pocket three cellular telephones, a set of keys, some bank paperwork, and his wallet. The agents told Reilly that he was not under arrest but that he was being detained with regard to a criminal investigation. The agents asked Reilly for identifying information. He provided his name, date of birth, social security number, and address. He told them that he had a Pennsylvania identification card in his wallet and that the agents could go into his wallet and retrieve it.

Agents found several identification documents in Reilly's wallet, two of which contained Reilly's photograph, but a different name and different state of issuance (Alabama and California). Reilly gave the agents additional information relating to his residence, his travel with Taylor, Taylor's residence, their respective cell phone numbers, the owners of the cell phones in his pocket, his business, his previous arrests, and his military history.

SA Judkins then placed Reilly in handcuffs and again told him that he was not under arrest but was being detained during ATF's criminal investigation. SA Judkins read Reilly his <u>Miranda</u> rights. Reilly stated that he understood his rights and was

willing to speak with the agents. The agents then conducted a lengthy interview of Reilly.

SA Brooks confirmed that Reilly was unarmed and then approached Taylor, who was still standing near the trunk of the car. Brooks identified himself as an ATF agent and asked Taylor about the guns. She stated that she had purchased a pistol and a shotgun, but that she did not know the caliber or gauge of the guns. SA Brooks then left Taylor temporarily, during which time he spoke briefly with Reilly, who confirmed that he had a prior felony conviction for a marijuana offense.

When SA Brooks returned to Taylor, Taylor asked what was going on. Brooks told her that Reilly was a convicted felon and that he had just been seen carrying a shotgun box out of a gun store. Brooks inquired as to who lived in the Niskey Lake Road house, and Taylor stated that Reilly stayed there occasionally but also spent time in other states. Brooks asked Taylor whether the agents "could search the house with her there, with her walking through with [the agents] in the house." Taylor responded that she had two other firearms inside the house. Brooks said that he would like to see those firearms. Taylor agreed to take the agents through the house and permit them to search the house. The agents asked Taylor questions during the walk-through of the house, which Taylor answered.

SA Brooks began his search with Taylor in the basement, at which time SA Sedberry presented Taylor with a written consent-to-search form. Taylor declined to sign the form but reconfirmed, and did not revoke, her oral consent to search the house.

5

Taylor then showed the agents two firearms that were kept upstairs in the master bedroom. With Taylor's permission, the agents opened the nightstand drawers on both sides of the bed, each of which contained a pistol. Taylor led the agents through other bedrooms and then to the garage, where Task Force Officer Griffin located two large packages of marijuana in a barbecue grill. At that point Taylor was placed in handcuffs, and the agents decided to apply for a search warrant to complete the search of the house. The agents did not further question Taylor until after the search warrant was obtained and she was given Miranda warnings.

At 4:43 p.m. on March 19, 2014, Atlanta Police detective and ATF Task Force Officer William Johnson applied for and obtained from a Fulton County Superior Court Magistrate Judge a search warrant for 1901 Niskey Lake Road, S.W. The application, based in part on items found in the house during the initial search, sought a warrant to search for evidence of violations of the Georgia Controlled Substances Act. The warrant authorized law enforcement officers to search for, among other things, electronic devices.

Agents conducted a search pursuant to the warrant and found numerous incriminating items, including heat sealers, a vacuum sealer, packaging materials, money counters, and a scale.

After obtaining the search warrant, SA Sedberry approached Taylor (still in handcuffs and seated on a chair in the driveway) to read Taylor her Miranda rights and obtain an advice-of-rights form. Taylor initialed each paragraph of the form and signed the waiver at the bottom of the form under the pre-printed statement:

>     I have read this statement of my rights or it has been
>     read to me, and I understand these rights. At this time
>     I am willing to answer questions without a lawyer
>     present. No promises or threats have been made to me,
>     and no pressure or force of any kind has been used
>     against me.

Agents interviewed Taylor after she had waived her rights.

SA Brooks gave Reilly's three cell phones to SA Kosch for processing, and told SA Kosch that he had consent from Reilly to search those phones. Kosch used a "Cellebrite" device to extract data from Reilly's cell phones on the scene. That process took several hours.

After the search of Reilly's phones was completed, SA DeGennaro gave Kosch two phones from Taylor to process. Kosch asked Taylor if she had any problem with the officers searching her cell phones, and she gave Kosch verbal consent to search her phones. Taylor's consent was probably given after the search warrant was obtained. Kosch then searched Taylor's phones using his Cellebrite device.

On May 30, 2014, SA Sedberry applied for and received a federal search warrant to search several electronic devices, including computers and cell phones seized from the Niskey Lake Road residence on March 18, 2014. The government sought authorization to search the cell phones even though they had already been searched on-site because the on-site search had not captured all of the potential data that could be retrieved during a search in a forensic laboratory.

### IV.  Reilly's Motion to Suppress [Docs. 23, 49]

Reilly seeks to suppress statements and items seized from his person and the residence located at 1901 Niskey Lake Road. He argues that he was wrongfully detained without reasonable suspicion, that the agents did not have valid consent to search the residence, and that the May 30, 2014 warrant to search the cell phones was the fruit of the initial wrongful search of the residence. The R&R concluded that the agents had reasonable suspicion to conduct an investigative stop, that Reilly's statements were voluntary and preceded by Miranda warnings, that Taylor gave valid consent to search the residence, and that the search warrant was therefore not the fruit of an illegal search. Thus the R&R recommends that Reilly's motion be denied.

Reilly raises two objections. He first objects to the conclusion that his statements (both before and after he received Miranda warnings) were made voluntarily. Based on the totality of the circumstances, the Court finds that Reilly's pre-Miranda statements were non-custodial and voluntary. The Court further finds that Reilly's custodial statements (those made after Reilly was placed in handcuffs) were made after a knowing and voluntary waiver of his Miranda rights. Reilly's first objection accordingly is overruled.

Reilly next challenges the R&R's conclusion that Taylor gave valid consent to search the residence. The Court overrules Reilly's second objection for the following reasons. As an initial matter, it is unclear whether Reilly has standing under the Fourth Amendment to challenge the search. The Fourth Amendment protects those with a "legitimate expectation of privacy

in the invaded place." Rakas v. Illinois, 439 U.S. 128, 143 (1978). Here, Taylor had a Fourth Amendment interest against invalid searches because she lived at the residence. The record indicates, however, that Reilly stayed at the residence only occasionally. Reilly has not shown that his occasional presence created a legitimate expectation of privacy at the time of the search.

Even assuming, however, that Reilly has standing to challenge the search, the Court has reviewed the record and agrees with the R&R that Taylor's consent was valid. The government bears the burden to show by a preponderance of the evidence that consent was freely and voluntarily given and was not mere submission to a show of authority. Florida v. Royer, 460 U.S. 491, 497 (1983). Here, the evidence in the record shows that Taylor twice gave her oral consent for the agents to search the residence. Reilly does not point to, nor does the Court find, any indication that Taylor's consent was coerced. Accordingly, to the extent Reilly has standing to challenge the search, his objection is overruled.

V.   **Taylor's Motion to Suppress [Doc. 46]**

Taylor seeks to suppress all evidence and statements obtained through the search of the property located at 1901 Niskey Lake Road, arguing that the search and the investigative detention of Taylor by the agents violated her Fourth, Fifth, Sixth, and Fourteenth Amendment rights. The R&R concluded that the agents had reasonable suspicion to conduct a brief investigative stop, that the agents obtained Taylor's valid consent to search the home, and that statements made by Taylor prior to her being placed in handcuffs were non-custodial. Finding no constitutional

violation, the R&R recommended that Taylor's motion be denied. Taylor did not file objections. Having reviewed her motion and the R&R, the Court finds no clear error. The R&R accordingly is adopted and Taylor's motion is due to be denied.

## VI.  Conclusion

For the foregoing reasons, Defendant Reilly's objections to the R&R [Doc. 102] are OVERRULED, and the R&R [Doc. 97] is ADOPTED IN FULL. Defendant Reilly's Motion to Suppress [Docs. 23, 49] is DENIED, and Defendant Taylor's Motion to Suppress [Doc. 46] is likewise DENIED.

SO ORDERED this 17 day of July, 2015.

_____
ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE